UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \*

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff;** | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| **SAMANTHA DEFOREST-DAVIS,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

*"[S]urely, if ever a[wo]man is to receive credit for the good [s]he has done, and [her] immediate misconduct assessed in the context of [her] overall life hitherto, it should be at the moment of [her] sentencing, when [her] very future hangs in the balance." 1*

\* \* \*

Ms. Deforest-Davis respectfully requests that the Court impose a sentence of probation in this case. Ms. Deforest-Davis is an idealistic young woman who, because of an unhealthy relationship with Jackson Cosko, made a terrible set of mistakes that were very much out of character for her. Prior to this incident, she had no prior criminal convictions. She is extremely remorseful and has already suffered the consequences of the decisions she made to serve the interests of Mr. Cosko. She demonstrated immediate acceptance of responsibility for her misconduct in this case, accepting an early plea and agreeing to cooperate fully and truthfully with

---

1 *United States v. Adelson*, 441 F. Supp. 2d 506 513-514 (S.D.N.Y. 2006) ("This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'")

1

the government. While Ms. DeForest-Davis in no way seeks to diminish her involvement in this scheme, it is undisputed that she would never have become involved in the criminal conduct but for the actions of Mr. Cosko. As she has stated in the letter that is quoted in full in Paragraph 21 of the PSR, Ms. DeForest-Davis wishes she could go back in time and make better choices. She is prepared to accept the consequences of her misconduct and has expressed her deep regret to the victims of Mr. Jackson's doxing. As a public servant herself, she appreciates the work of all politicians and their staff and regrets having caused them embarrassment, stress, and risk of harm. She has written a letter to the Senator and staff members who were affected by her actions. To protect their privacy, that letter was delivered to the government to share with the victims and a copy was subsequently provided to the Probation Office for inclusion in the PSR.

## ARGUMENT

When imposing a sentence, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for [the applicable offense and the applicable category of defendant as set forth in the United States Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is *not* an appropriate means of promoting correction and rehabilitation.

*See* 18 U.S.C. § 3582 (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added).

**(1) United States Sentencing Guideline Considerations**

The PSR calculates Ms. DeForest-Davis's guidelines range consistent with what the parties estimated in the plea agreement, that is, a range of 0 to 6 months. As part of the plea agreement, the government agreed to the low end of the sentencing guideline range. Ms. DeForest-Davis asks the Court to sentence her to a term of probation which is appropriate under the circumstances of this case and is within the guidelines. While Ms. DeForest-Davis acknowledges that when law enforcement initially contacted her she made false statements about her involvement in the offense. That conduct has been appropriately considered in her guideline calculation by adding a two-level increase for obstruction of justice. However, after being appointed counsel, Ms. DeForest-Davis met with the government again on more than one occasion and fully acknowledged her own misconduct. She fully and completely accepted responsibility for her actions and entered an early guilty plea to an information.

Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007). Because the Guidelines merely reflect

a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita v. United States*, 551 U.S. 338, 348, 350 (2007). Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 128 S.Ct. at 598 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))).

**(2)     The Nature and Circumstances of the Offense.**

Ms. DeForest-Davis does not dispute the seriousness of her misconduct. However, it is important to note that the offenses to which she entered a guilty plea are misdemeanor offenses. She immediately accepted responsibility for her misconduct and the guidelines assess the severity of the offense as warranting a probationary sentence.

**(2) The History and Characteristics of the Defendant.**

Ms. DeForest Davis is only 24 years old. She was employed at the time of the offense, but because the offense involved her employer, she lost her job. She has since moved back to Wisconsin and has taken a teaching job. She was raised in a family that for several years maintained a foster home for teenage children. She had a traumatic childhood that is recounted in Paragraphs 44 and 45 of the PSR and has mental health issues as outlined in Paragraphs 53 and 54. Her relationship with Jackson Cosko and his influence over her must be viewed in the context of this history and background.

**(4)     The Purposes of Sentencing.**

A sentence of probation would be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. Ms. DeForest-Davis's prosecution for this offense has had a tremendous impact on her, allowing her to recognize the damage that she has done. As a result of her conduct, she now has a criminal conviction. This conviction will have significant consequences on her future -- most significantly, it will limit her employment opportunities.

No period of incarceration is necessary to protect the public from further crimes of Ms. DeForest-Davis – there will be no further crimes. The effect that this case has had on her life – absent any period of incarceration – is sufficient to ensure that she will never commit another offense. Moreover, as the United States Sentencing Commission has recognized, defendants in Criminal History Category I are unlikely to recidivate. See United States Sentencing Commission, *Recidivism and the "First Offender," A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate* (May 2004).

Nor is a sentence of incarceration necessary to deter others. Ms. DeForest-Davis has and will continue to be punished for her conduct. To the extent that would-be criminals are deterred by the sentences of others, Ms. DeForest-Davis's damaged reputation, along with the negative effects on her ability to obtain employment, would significantly deter any similarly situated individuals.

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Id.; see also Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict

Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. See Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. Id. at 1. It examined the effects of changes to both the certainty and severity of punishment. Id. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." Id. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." Id. at 1. Research regarding white collar offenders in particular (presumably the most rational of potential offenders) found no difference in the deterrent effect of probation and that of imprisonment. See David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587 (1995); see also *Gabbay*, *supra*, at 448-49 ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").

**(5)    The Kinds of Sentences Available.**

Here, a sentence of probation is consistent with the statutes and guidelines.  A sentence of probation itself is a "'substantial restriction of freedom.'" *Gall*, 128 S.Ct. at 595 (citation omitted).  As the Supreme Court has explained:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.  Most probationers are also subject to individual "special conditions" imposed by the court.

*Id*. at 595-96 (footnote omitted).

 This Court may consider the costs of incarceration and weigh that against the necessity for it and other alternatives available to the Court.  *See e.g., United States v. Moreland*, 366 F. Supp.2d 416, 422 (S.D.W.Va., 2005); *United States v. Angelos*, 345 F. Supp.2d 1227 (D. Utah 2004); *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000 (Bright, J., concurring); and *United States v. Hughes*, 825 F. Supp. 866, 868 (D. Minn. 1993).

This Court may also consider the United States Sentencing Commission's Report entitled Alternative Sentencing in the Federal Criminal Justice System, whereby the Commission states that affective alternative sanctions are important options for the federal criminal justice system. The Report also states that "for the appropriate offender, alternatives to incarceration can provide a substitute for costly incarceration."  See Alternative Sentencing in the Federal Criminal Justice System, January 2009, pg. 20.  Ms. DeForest-Davis is the "appropriate offender" to which the Commission refers.

**6)      The Need to Avoid Unwarranted Sentence Disparities.**

Not all disparities in sentencing are prohibited – only *unwarranted* disparities.  *See* 18 U.S.C. § 3553(a)(6).   Here, a consideration of the § 3553 factors demonstrates that in this case a sentence of probation is appropriate. Such a sentence is well-within the guideline range. Thus no unwarranted disparity would result from a sentence of probation.

**(7)      The Need to Provide Restitution to Any Victims of the Offense.**

There has been no request for restitution in this case and thus the Court need not address this factor.

For all of these reasons, Ms. DeForest-Davis asks the Court to sentence her to a term of probation.

                                              Respectfully submitted,

                                              A.J. KRAMER
                                              FEDERAL PUBLIC DEFENDER

                                              "/s/"

                                              Michelle Peterson
                                              Chief Assistant Federal Public Defender
                                              625 Indiana Avenue, N.W., Suite 550
                                              Washington, D.C.   20004
                                              (202) 208-7500