IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMANTHA DEFOREST-DAVIS,<br><br>*Defendant.* | Case No. 18-CR-303-2<br><br>Honorable Thomas F. Hogan<br><br>Sentencing:   October 28, 2019 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Sentencing Memorandum.  As discussed below, the **Government recommends that the Court sentence the Defendant on Count One of the Information (Aiding and Abetting Computer Fraud, in violation of 18 U.S.C. §§ 2, 1030(a)(2)(B), and 1030(c)(2)(A) (Count 1), to a sentence of five years' probation, with the condition of six months of home confinement, and for Count Two (Attempted Tampering with Evidence, in violation of 22 D.C. Code §§723 and 1803) (Count 2) to a sentence of 180 days of incarceration, execution of sentence suspended ("ESS") as to all, with a period of five years' probation.**  The Government recommends that the terms of probation run concurrently, but that the Court reserve the right to sentence the Defendant to consecutive terms of imprisonment should she fail to successfully satisfy her probationary term.   The Government further recommends that the Court impose several special conditions of probation, which are discussed in detail *infra*.  This sentence is below the maximum sentence under the statutes of conviction and is consistent with the plea agreement reached by the parties (because it does not recommend any incarceration, which the plea agreement limited to the low end of the applicable guideline range). The Government also has no objections to the Presentence Report ("PSR").   The Government

- 1 -

relies on the following points and authorities and any other points and authorities that may be cited at the sentencing hearing. The Government has also consulted with the victim of these crimes, Senator Hassan and her office, and there is no victim impact statement in this case.

## INTRODUCTION

The Defendant, Samantha Deforest-Davis, pleaded guilty to aiding and abetting Jackson Cosko ("Cosko") by providing Cosko keys that, as she well knew, Cosko would use to break into the Office of a United States Senator for the purpose of stealing information from computers that belonged to the United States Senate. The Defendant also pleaded guilty to attempting to destroy evidence of the burglary the next morning. While it was not the basis for the Defendant's plea, it is also important that, even after Cosko was arrested, the Defendant continued to lie to the Capitol Police. Finally, the Court should be aware that, in the months leading up to the burglary, the Defendant consciously ignored warning signs that Cosko was acting in a criminal manner, and the Defendant failed to report those warning signs to her employer, Senator Maggie Hassan.

As set forth further below, between July and September 2018, the Defendant knew that Cosko had repeatedly taken her office keys from her purse; knew that Cosko had no innocent reason to take her keys; and even suspected that Cosko had illegally used her keys – but instead of reporting these warning signs, the Defendant turned a blind eye to Cosko's behavior. As a result, Cosko was able to repeatedly burglarize Senator Hassan's office, and through those burglaries Cosko was able to steal enormous volumes of data, some of which Cosko used to commit a separate set of "doxxing" offenses.[1]

---

[1] "Doxxing" is the act of publishing private or identifying information about an individual on the Internet, typically with malicious intent. As used in in this Memorandum, it refers to violations of 18 U.S.C. § 119 (Making Public Restricted Personal Information).

To be clear, there is no evidence that the Defendant was aware of the volume of Cosko's crimes, and there is no evidence that the Defendant knew about Cosko's doxing offenses. Moreover, it is clear that the Defendant's role in the offenses was far lesser than Cosko's. Finally, after the Defendant obtained counsel, she cooperated with the United States, provided truthful information to investigators, and accepted responsibility for her actions by pleading guilty to two misdemeanor counts. In this context, and in light of several mitigating factors including the Defendant's youth, complicated relationship with Cosko, and her financial debt to Cosko, the Government believes that the Defendant should be sentenced to six months of home confinement as part of a five year probationary term.

## FACTUAL BACKGROUND

On July 30, 2019, the Defendant accepted responsibility and pled guilty to Aiding and Abetting Computer Fraud, in violation of 18 U.S.C. §§ 2, 1030(a)(2)(B), and 1030(c)(2)(A), and Attempted Tampering with Evidence, in violation of 22 D.C. Code §§723 and 1803. In exchange for the Defendant's guilty plea, the Government agreed not to charge the Defendant with any further crimes related to her factual proffer, including possible obstruction of justice and false statement felony offenses.

As discussed more fully in the Defendant's statement of offense, the Defendant and Cosko were fellow staffers for Senator Maggie Hassan in 2018, and they had an on and off intimate relationship. The Defendant was aware that Cosko was the office's computer systems administrator, and that he was terminated from his employment for cause. The Defendant was also aware that when Cosko was terminated, his right of access to Senator Hassan's office

("Office") and computer systems was terminated.  The Defendant was also aware that Cosko was angry about being fired, and that he vocalized that anger to her on multiple occasions.

The Defendant and Cosko had a complex relationship in July 2018.  The Defendant continued to socialize with Cosko and would, on occasion, sleep over his home.  Cosko was using and sharing narcotics, and he had lent the Defendant several hundred dollars so that the Defendant could pay her rent. When Cosko gave the Defendant the money, he told her that he would need a favor from her in the future.

Cosko broke into Senator Hassan's office on at least four occasions, including on or about July 26, 2018, August 6, 2018, and October 2, 2018.  Cosko gained access to Senator Hassan's office by unlawfully obtaining keys from the Defendant, who was (at the time) still employed in the "Office."  Cosko then used those keys to enter the Senator's office alone at night, with the specific intent of unlawfully accessing Senate-owned computers, for the express purpose of stealing electronic information – including login credentials and other means of identification belonging to Senate employees.  In one instance, the Defendant left her keys in her purse when she went to bed.  After she awoke and left for work from Cosko's home, she discovered that her office keys were not in her purse. The Defendant contacted Cosko to see if he had her keys, and he acknowledged that he had her keys. When the Defendant retrieved the keys, she asked how he got the keys, but he evaded the question.  Again, in August 2018, a similar incident occurred again, where the Defendant slept over at Cosko's home; when she left the following morning, she realized again that her keys were missing from her purse.  Again, she called Cosko and Cosko returned the keys to the Defendant.  While the Defendant did not push Cosko about why he had the keys, she strongly suspected that Cosko had used her keys to access the "Office" because her office colleagues informed her that the office appeared to have been tampered with after hours.  Shortly

thereafter, the Defendant spoke with Cosko about the Senator's office, and Cosko showed her electronic documents and materials from the "Office" that post-dated his firing. The Defendant knew that Cosko did not have authorized access to the "Office," and she was thereafter aware that Cosko had used her key to access the "Office" and obtain data from the office computers.  The Defendant did not report these incidents to her office supervisors.

On at least one occasion, on October 2, 2018, Cosko obtained the keys from the Defendant with the defendant's knowledge that he would use the keys to illegally enter the Senator's office and access protected computers inside the "Office." That evening, Cosko electronically communicated with the Defendant and asked to borrow her keys to Senator Hassan's office. Cosko met the Defendant in person and told her he needed the favor to borrow her keys to the "Office." When the Defendant gave Cosko the keys, she understood that he needed the keys to unlawfully enter the "Office" and access protected computers in the "Office." Shortly after 10:10 p.m., Cosko used the Defendant's key to open the locked office door of the "Office."  Cosko unlawfully accessed information on Witness 3's computer, and attempted to review Witness 3's e-mails. While Cosko was doing so, Witness 2 entered the "Office" and immediately recognized Cosko as a person who did not have authority to be inside the "Office."  Cosko then fled.

The following morning, on October 3, 2018, the Defendant met with Cosko in person so he could return the defendant's keys so that the defendant could open the "Office" (which was one of her duties).  During their meeting, Cosko told the Defendant to wipe down all of the computers, keyboards and computer mice, and to unplug the computers in the "Office."  The Defendant understood, and Cosko hoped, that these actions would destroy latent fingerprints as well as electronic evidence of his unlawful conduct, and thwart detection by law enforcement.  The Defendant, who knew that the Cosko had unlawfully entered the "Office" the night before, did in

fact attempt to "wipe down" one or more computer keyboards and computer mouse devices, but was unsuccessful because Witness 3 entered the "Office" early. She did not unplug, or attempt to unplug, the computers. The Defendant then texted Cosko at about 8:28 a.m. on October 3, 2018, stating, "Hey[.] So I was able to wipe down the keys and mouse but [Witness 3] was coming so I could [not] do the other thing[.]" Cosko replied, "Thanks," and she finished the conversation by responding, "Np, sorry I couldn't do everything."

Later in the day of October 3, 2018, members of Senator Hassan's office alerted the staff that Cosko had illegally entered the "Office." Shortly thereafter, the Defendant spoke with Senator Hassan's staff in the "Office" and she informed them that she might have accidently left her keys in Cosko's car on the evening of October 2, 2018. She falsely denied, however, knowing anything about his illegal activities or to willfully providing him the keys.

On October 9, 2018, the Defendant was interviewed by special agents for the United States Capitol Police at Dulles Airport. In a recorded interview, the Defendant was warned that lying to federal agents could be a crime, and the Defendant falsely stated she was unaware of Cosko's criminal activities, and again denied intentionally giving him the keys to the "Office."

Between October 9, 2018 and November 27, 2018, the Defendant deleted her electronic communications with Cosko in an effort to hide them from law enforcement. On November 27, 2018, special agents for the U.S. Capitol Police executed a search warrant on the Defendant's electronic device in the District of Columbia, and interviewed her again about her conduct. During the interview, special agents confronted the Defendant with electronic communications between herself and Cosko where he asked her for the keys and she stated that she wiped down the computers for him. The Defendant again made false statements to the special agents about her knowledge about Cosko's criminal activity, and again denied knowing that she had willfully given

him keys to the "Office," or knowing that he had previously obtained electronic material from his prior burglary of the "Office." The Defendant subsequently met with investigators and prosecutors and acknowledged her actions, expressed remorse, and was fully cooperative.

## THE PLEA AGREEMENT

The Defendant pled guilty early in this case to two misdemeanor charges, Aiding and Abetting Computer Fraud, in violation of 18 U.S.C. §§ 2, 1030(a)(2)(B), and 1030(c)(2)(A) (Count 1), and one count of Attempted Tampering with Evidence, in violation of 22 D.C. Code §§723 and 1803 (Count 2). The Defendant truthfully debriefed with the Government prior to entering the guilty plea, but the plea agreement was NOT a cooperation agreement. Instead, the Government took into account the Defendant's cooperation and other sentencing factors when it extended the plea agreement in this case.

As the Court is aware, if the Government had charged the Defendant with all potential charges, she would have faced a higher recommended sentence under the U.S. Sentencing Guidelines ("U.S.S.G."). However, the Government believes the plea offer takes into account the Defendant's cooperation and her unique circumstances, including her more minimal role in the criminal activity (relative to Cosko).

## ARGUMENT

### I. Introduction

The Government respectfully submits that a five year probationary sentence with six months of home confinement is warranted under all of the circumstances of the case. The Defendant's assistance helped assure the conviction of Cosko, who was clearly the more culpable of the two persons involved in this criminal enterprise.

## II. Application of the Sentencing Guidelines and Maximum Sentences

### A. Legal Analysis

The United States Sentencing Guidelines ("U.S.S.G.") provides advisory recommendations which the courts "must consult . . . and take . . . into account when sentencing," United States v. Booker, 543 U.S. 220, 264 (2005), defendants for violations of the United States Code. As the Supreme Court has explained, "[a]s a matter of administration and to secure nationwide consistency, the Sentencing Guidelines should be the starting point and the initial benchmark" in for determining the appropriate sentence. Gall v. United States, 552 U.S. 38, 49 (2007).

### B. The Presentence Investigation Report- Offense Level Calculation

#### 1. Offense Level For Counts One and Two

The Probation Office in the Presentence Investigation Report ("PSR") determined that, after accounting for the applicable specific offense characteristics, a two point-increase for obstruction of justice and a two-point deduction for the defendant's acceptance of responsibility and for minor participant, the offense level for Count One is "6." The Government submits that this calculation is correct. The maximum sentence for Count One is 1 year of imprisonment; a fine of $100,000 or twice the pecuniary gain or loss of the offense; a term of supervised release of not more than 1 years; or probation not to exceed five years pursuant to 18 U.S.C. §3561.

Count Two is a D.C. Code offense, for which no guideline range is available. Count Two carries a maximum sentence of 180 days imprisonment; a fine of $1,000; and a term of supervised probation of not more than 5 years (pursuant to 16 D.C. Code § 710). The Court may impose a suspended sentence of jail time (ESS) with a period of probation.

### 2. The Recommended Sentencing Range Under The U.S.S.G.

The Government agrees with the PSR's assessment that the Defendant has a Criminal History Score of 0. The Government submits that, based on the final combined offense level of 6 prior to any upward departure, the recommended sentencing range under the U.S.S.G. is 0 to 6 months in prison, in Zone A under U.S.S.G. §5B1.1.

### III. The Statutory Sentencing Factors

As noted above, determining the recommended sentencing range under the U.S.S.G. is the first of two required steps for sentencing under the United States Code. The second step requires the Court to consider that range, to consider other relevant factors set forth in the guidelines, and to consider the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Hughes, 401 F.3d 540, 546 (4th Cir. 2005). These factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records convicted of similar conduct.

### IV. The Government's Recommended Sentence

The Government believes that the Court should sentence the Defendant to the low end of the recommended sentencing range because the sentence is compliant with the U.S.S.G. and accurately reflects the appropriate 18 U.S.C. §3553(a) factors.

V.      **Analysis of the Statutory Sentencing Factors**

   1. **Nature and Circumstances of the Offenses**

The government submits that this factor weighs in favor of a period of incarceration. The Defendant's criminal conduct, including her obstruction crimes, were serious and she committed them deliberately, and intentionally, and she continued her criminal conduct even after she knew that Cosko had been arrested and charged. While some of her crimes were committed on an impulse, some of them required thought, including her deletion of records (from her cellphone) and repeated false statements. She made a knowing choice to protect Cosko and herself over the welfare of victims, including her own employer. That choice then resulted in repeated duplicity, which included that of her employer and the U.S. Capitol Police in two separate interviews.

The Defendant did not appear to share the same malevolence as Cosko, but she knew his crimes were serious and had gained national attention. Her decision to align with Cosko, therefore, is serious and worthy of punishment.

   2. **History and Characteristics of the Offender**

The Defendant appears to be a smart, capable and intelligent young woman who has had to endure quite a bit in her life. She has graduated college and spent much of her life working to help others. She has had a supportive family and appears to have worked for much of her life. She is very young and we agree that her background made her susceptible to control by Cosko. She also has no prior criminal history, which places her in significant contrast to Cosko.

We believe the Defendant's history and characteristics make it unlikely that she will commit future criminal conduct. The PSR is replete with mitigating circumstances in the Defendant's character or background relative to her conduct. This factor favors a probationary sentence.

### 3. The Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, to Protect the Public

While some of circumstances of this factor favor incarceration, the Defendant's decisions after obtaining counsel and learning of potential criminal charges against herself are laudable, and the totality of the circumstances of this case favor a probationary sentence.  The conduct, standing alone, suggests the Defendant needs a significant sentence top promote respect for the law.  In the context of this case, however, a five-year probationary sentence with a six month period of home confinement for a 24 year old cooperator is a significant sentence.  Five years is a long time, and every day of probation will be a reminder to the defendant about her conduct.  It will also be a message to other young people that their punishments will not be limited to a quick weekend in jail, or six month sentence: the consequences and reporting requirements for these crimes will remain for many years, and you will be carefully monitored to make sure you do not commit further criminal acts.  Further, if you violate your probation, you will be sentenced harshly.

Further, when the Defendant agreed to cooperate with the Government in this case, she knew that she might have to testify publicly against Cosko, her former boyfriend in a high profile case.  She was also aware her criminal conduct would become public and that her name and reputation would be forever effected by her conduct.  That is, in fact, what has happened.  The Defendant's age and cooperation are grounds for leniency, but there is more.  As discussed above, her motive and role in the conspiracy was much more limited than that of Cosko.  We therefore believe future incarceration of her would not effectuate specific deterrence for her.  In short, we believe a lengthy probation sentence in this case will properly promote respect for the law, provide adequate deterrence to the Defendant and others, and to justly punish the Defendant for her conduct, for the harm that she helped impose on the victims.

### 4. The Need to Provide the Defendant with Educational or Vocational Training or Medical Care

The Defendant would no doubt benefit from additional education and counseling.  We also believe that she should obtain drug treatment and mental health counseling while on supervised probation.

### 5. The Need to Avoid Unwarranted Sentence Disparities

The Government believes its recommended sentence will avoid any unwarranted sentence disparities.  The Defendant's role in the criminal activity was far less than Cosko and her background is full of far more mitigating factors.  While the Government is not aware of any case involving conduct that is distinctly similar to the conduct in this unusual case, the undersigned prosecuted a similar case in <u>United States v. Dorene Browne-Louis</u>, 17-CR-131 before Judge Bates.  In that case, Ms. Brown-Louis, who worked for a member of Congress, assisted her more culpable co-defendant in releasing private images of a Congresswoman, and she later lied to law enforcement and in the Grand Jury.  She also debriefed with the Government and had no prior convictions: she was sentenced on April 26, 2018 to a term of two years of probation.  As such, a probationary sentence in this case is appropriate and not disparate.

### **CONCLUSION**

For all of the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant to a five year probationary term on Counts 1 and 2, with six months of home confinement, to be served concurrently.  The Government further requests that the Court order the Defendant to pay special assessments of $100 for each of Counts 1 and 2 . The Government lastly requests that the Court subject the Defendant to three special conditions of probation given the specific nature of this case. We ask that the Court order: (1) a stay away from

Senator Hassan and her current and former staff without approval from Probation (this includes Cosko); (2) restrict her use of anonymous (including TOR or private virtual private networks) without approval from Probation, and (3) drug and mental health treatment by a mental health specialist.

        Respectfully submitted,

        ALESSIO D. EVANGELISTA
        Attorney for the United States, Acting Under Authority Conferred by 28 U.S.C. § 515

BY: _____
        Demian S. Ahn
        DC Bar No. 491109
        Tejpal S. Chawla
        DC Bar No. 464012
        Assistant United States Attorneys
        United States Attorney's Office
        555 Fourth Street, N.W.
        Washington, D.C. 20530